

ORDERED in the Southern District of Florida on April 12, 2013.

_A. Jay Cristol_
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re | Case No. 09-21481-BKC-AJC |
| | Chapter 7 |
| FONTAINEBLEAU LAS VEGAS | Jointly Administered |
| HOLDINGS, LLC, et al., | |
|     Debtors. | |
| _____/ | |
| SONEET R. KAPILA, Chapter 7 Trustee of | Adv. No. 11-02091-BKC-AJC-A |
| the estate of FONTAINEBLEAU LAS VEGAS | |
| HOLDINGS, LLC, et al. | |
|     Plaintiff, | |
| vs. | |
| SPIEGEL, LLC, | |
|     Defendant. | |
| _____/ | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court on February 28, 2013 at 3:00 p.m. in Miami, Florida on the amended motion (the "Motion") (ECF D.E. #56) and memorandum of law (the "memorandum of law") (ECF D.E. #57) of Defendant Spiegelworld, LLC (the "Defendant") for summary judgment on the Trustee's complaint to avoid and recover preferential and fraudulent transfers (the "Complaint") (ECF D.E. #1); the declaration of the Defendant's President, Ross Mollison (ECF D.E. #50) (the "Mollison Declaration"); the Trustee's response in opposition and cross-motion for summary judgment (the "Trustee's Response and Cross-Motion") (ECF D.E. #63), and the Defendant's response and reply in further support (the "Defendant's Reply") (ECF D.E. #75).

The Motion seeks summary judgment on Count I of the Complaint seeking avoidance of a preferential transfer made on April 17, 2009 for $40,000 (the "preferential payment") pursuant to 11. U.S.C. §548(a)(1)(B). Specifically, the Motion asserts that a subsequent new value defense pursuant to 11. U.S.C. §547(c)(4) insulates the preferential payment from recovery by the Trustee. The Trustee no longer pursues Count II of the Complaint seeking recovery of fraudulent transfers pursuant to 11. U.S.C. §544(b) and the Florida Uniform Fraudulent Transfers Act.

The Defendant relies on various documents and testimony to support its defense that it provided subsequent new value to the Debtors in an amount exceeding the preferential payment between April 17, 2009, the date of the preferential payment, and June 9, 2009, the date of the Debtors' Chapter 11 bankruptcy filing. First, the Defendant relies on various email communications between itself and the Debtors, work product created for the Debtors, and invoices in the amount of $80,000 to prove that it continued to work for and provide new value

to the Debtors subsequent to the preferential payment (ECF D.E. #57-2). Next, the Defendant relies on the Declaration of Ross Mollison, stating that the Debtors had agreed to pay the Defendant a minimum weekly management fee of $10,000 in a Production Management Agreement (the "Agreement") (ECF D.E. #50-1) in payment for services to design a theater venue and create and execute a live performance show; that Defendant worked for approximately 8 weeks between the preferential payment date and the Debtors' bankruptcy filing; that the Defendant provided approximately $80,000 worth of new value to the Debtors after receiving the $40,000 preferential payment, and that the Defendant did not receive any payments for the services rendered after the preferential payment date. The Mollison Declaration also describes the various kinds of services performed for the Debtors as pursuant to the Agreement.

The Defendant further relies on the deposition testimony of Howard Karawan, the Debtors' former Chief Executive Officer and Chief Restructuring Officer to prove that it provided subsequent new value to the Debtors (ECF D.E. #75-1). In his deposition testimony, Mr. Karawan testifies that at no point after April 17, 2009 did the Defendant discontinue performing its obligations under its Agreement with the Debtors. Mr. Karawan also stated that the deal between the Defendant and the Debtors had the potential to be very profitable for the Debtors and was a key component for drawing traffic to the Debtors, a Las Vegas resort.

Last, the Defendant relies on the Trustee's Response to its first set of interrogatories, where the Trustee answers that he does not contend that the Debtors received less than reasonably equivalent value in exchange for the preferential transfer. (ECF D.E. #57-1).

The Trustee relies on his own declaration to oppose the Motion and to support its Cross-Motion, and asserts that the Defendant did not provide any new value enhancing the Debtors' estate. (ECF D.E. #63).

**Statement of Undisputed Facts**

The Debtors and the Defendant entered into a contract on October 24, 2008 where Defendant would provide services to design a theater venue and create, produce, and execute a live theater show exclusively for the Debtors. The Defendant immediately began working on the project, and invoiced the Debtors monthly for $10,000 per week. The Debtors timely paid the first five invoices but defaulted on Invoice 006 on February 24, 2009, which Debtors did not pay until April 10, 2009 by check, which cleared on April 17, 2009 (the "preferential transfer date"). The Debtors then filed for Chapter 11 bankruptcy in the Southern District of Florida, Miami Division on June 9, 2009. The Defendants continuously worked for and provided services to the Debtors pursuant to the Agreement between February 24, 2009 and June 9, 2009. The Defendants were not paid for any work performed for the Debtors after the April 17, 2009 preferential payment date.

The Debtors' Chapter 11 case was converted to Chapter 7 on April 12, 2010. Trustee Soneet R. Kapila filed the herein adversary proceeding against the Defendant on June 8, 2011. The Defendant moved for summary judgment on December 7, 2012. The Trustee cross-moved for summary judgment on January 9, 2013, and a hearing was held on both parties' motions on February 28, 2013.

**Summary Judgment Standard**

Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to summary judgment as a matter of law. Fed. R. Civ. P.56(c). *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive

determination of every action." *Celotex,* 477 U.S. at 327. "The purpose of summary judgment is to assess the evidence to determine whether there is an actual need for trial." *Banco Latino International v. Lopez*, 95 F. Supp. 2d 1237, 1332 (S.D. Fla. 2000).

The moving party has the initial "responsibility of informing the…court of the basis for its motion and of identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. It is sufficient, as to issues on which the non-moving party will have the burden of proof at trial, for the moving party to simply point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993), *citing U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).

Once the moving party has informed the court of the basis for its motion, the burden then shifts to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *United of Omaha Insurance v. Sunlife Co.*, 894 F. 2d 155 (11th Cir. 1990); *Fitzpatrick,* 2 F.3d at 1116.

In order to defeat a motion for summary judgment, the non-moving party must do more than simply show that there is some doubt as to the facts of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court must "avoid weighing conflicting evidence or making credibility determinations." *Hilburn v. Murata Electronics North America*, *Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).

Federal Rule 56 must be construed not only with regard to the party moving for summary judgment but also with regard to the non-moving party and that party's duty to demonstrate that the movant's claims have no factual basis. *Hilburn,* 181 F.3d at 1225. "The mere existence of a

scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could find for the [non-moving party]." *Id.* Thus, the non-moving party must establish the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed fact to prevent a court's entry of summary judgment. *See First Nat. Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968).

### Analysis

The Defendant has satisfied the elements of the subsequent new value defense as defined by 11 U.S.C. §574(c)(4). The Defendant has established a *prima facie* case demonstrating it provided subsequent new value to the Debtors, thereby insulating the payment from recovery by the Trustee.

To maintain a Section 574(c)(4) new value defense, a creditor 1) must extend new value after receiving the challenged payments, 2) the new value must be unsecured, and 3) the new value must remain unpaid. *In re JSL Chemical Corp.,* 424 B.R. 573, 583 (S.D. Fla. 2010). Here, the Defendant provided new value to the Debtors by continuously working for the Debtors and providing services pursuant to the Agreement after receiving the preferential payment on April 17, 2009 up until the Debtors' bankruptcy filing on June 9, 2009. The new value was unsecured at all times, and the Defendant was not paid for the new value provided post-preferential payment.

The term "new value", for purposes of Section 547, is defined as,

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void or voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. §574(a)(2). "Consideration fitting the definition of "new value" and constituting a material benefit to the debtor has been found in a number of circumstances including: the value

of insurance coverage provided after the payment of delinquent premiums, *In re Dick Henley, Inc.,* 45 B.R. 693, 699 (Bankr. M.D. La. 1985); the value of leased equipment when the lessor permitted the debtor-lessee to continue using the equipment to produce inventory after default in rental payments, *In re Quality Plastics,* 41 B.R. at 243; and the value of the electricity supplied by the utility to the debtor after preferential payments, *In re Keydata Corp.,* 37 B.R. 324, 328-29 (Bankr. D. Mass. 1983)." *In re Jet Florida System, Inc.,* 841 F.2d 1082, 1084 (1988).

"In applying [the] definition of new value to the subsequent advance exception, courts have consistently looked to the principal policy objectives underlying the preference provision of the Bankruptcy Code. The first objective is to encourage creditors to continue extending credit to financially troubled entities while discouraging a panic-stricken race to the courthouse." *In re Jet Florida Systems,* 841 F.2d at 1083. Courts have generally required a transfer which fits within the subsequent advance exception to provide the debtor with a material benefit, and it is to this extent that a preferential transfer is insulated. *Id* at 1084. "A subsequent advance is excepted because it is reasoned that a creditor who contributes new value in return for payments from the incipient bankruptcy should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *Id* at 1083.

The Defendant's services to the Debtors constitute new value to the Debtors, who were providing services that would create a profitable entertainment venue and show attracting patrons and sponsorship to the Fontainebleau Las Vegas Resort upon its opening. Even though the Resort never did open, taking full advantage of the services provided by the Defendant, services of value were nonetheless provided pursuant to contract and are therefore compensable. Much like insurance coverage under which no claims are made, so too Defendant's services were deemed necessary by Debtors' in order to operate successfully; the fact that the Resort never did

reorganize and capitalize on the work provided does not mean that the work was not of value. When a vendor contracts to supply goods or services, that contract does not make the vendor a partner in the debtor's business. As long as goods and services were provided under the contract, the Debtors may not in retrospect challenge the value of those goods and services because the business failed. The Defendant continued extending new value and credit to the Debtors for nearly four months after Debtors failed to pay the February 24, 2009 invoice, and continued to provide new value for approximately two months after receiving the preferential payment. Defendant's ongoing work on the theater project was crucial to the Debtors' business plan as it would be necessary to the successful operation of a resort in Las Vegas, generating substantial revenue and profit for the Debtors.

That the Debtors were unable to emerge from Chapter 11 bankruptcy and that the Debtors eventually failed to open the Resort does not mean that the Defendant's new value was not a material benefit to the Debtors at the time it was given. In fact, deposition testimony of the Debtors' former Chief Restructuring Officer confirms that the Defendant had an incentive to continue working with the Debtors to help complete the project and help Fontainebleau Las Vegas open. The Debtors were relying on the work being performed by the Defendant during the eight week period prior to its bankruptcy filing. Although deposition testimony from Mr. Karawan reveals that the structure of the parties' agreement, particularly the management fee, "was really an advance that was going to be recouped by Fontainebleau Las Vegas out of gross profits prior to the distribution of net profits to Spiegelworld" (ECF D.E. #75-1, pp. 23-24), service provided pursuant to the Agreement with the Debtors constitutes new value, as that term is used in the statute.

The Defendant having satisfied its burden, the Trustee must establish there are genuine issues of material facts for determination at trial. However, the Trustee's mere disagreement that the Defendant failed to provide subsequent new value to the Debtors without more is insufficient to create a genuine issue for trial. The Trustee must do more than express doubt as to whether Defendant's new value materially benefitted the Debtors. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Debtors contracted with the Defendant to provide services the Debtors deemed necessary for the benefit of the business; the Defendant provided those services. The Court agrees with the Defendant that there is no genuine issue of fact present necessitating trial herein. Accordingly, based upon the record before it, it is

**ORDERED AND ADJUDGED** that the Defendant's Motion for summary judgment is GRANTED, and the Trustee's Cross-Motion for summary judgment is DENIED.

###

Submitted by:

Moumita Rahman
Law Firm of Moumita Rahman, PLLC
*Attorneys for the Defendant*
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7907
Fax: (347) 665-1480
Email:  moumita@rahmanlawpllc.com
NY Bar No. 4778635

Attorney Moumita Rahman is directed to serve a conformed copy of this Order on the parties listed below and file a certificate of service with the Court.

Served via Notice of Electronic Filing:
- Francis L. Carter flc@katzbarron.com, lcf@katzbarron.com
- Charles I Cohen pmouton@furrcohen.com
- Alvin S. Goldstein mmitchell@furrcohen.com
- Moumita Rahman moumita@rahmanlawpllc.com

Served via U.S. Mail:

Wahid Vizcaino
3191 Coral Way #401
Miami, FL 33145